# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3307

———————

United States of America,      *
                                 *

         Appellee,            *

                                   *    Appeal from the United States

     v.                             *    District Court for the

                                   *    District of South Dakota.

David Scout, also known as    *

David White Face,             *

                                   *

         Appellant.         *

———————

Submitted: February 11, 1997

Filed: May 1, 1997

———————

Before MAGILL, BEAM, and LOKEN, Circuit Judges.

———————

MAGILL, Circuit Judge.

A jury convicted David Scout, who is also known as David White Face, of assaulting a federal officer without a weapon, in violation of 18 U.S.C. § 111(a)(1) (1994).[1]  The district court[2]

---

[1]Scout was originally indicted on a charge of assaulting a federal officer with a dangerous weapon under 18 U.S.C. § 111(a)(1) (1994), which would have carried a maximum sentence of ten years imprisonment.  See 18 U.S.C. § 111(b) (1994).  Scout was convicted for the lesser included charge of assault without a weapon, which allows a maximum three-year sentence.  See 18 U.S.C. § 111(a) (1994).

[2]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

sentenced Scout to fourteen months imprisonment. At trial Scout maintained that he had no memory of the alleged assault because of an alcohol-induced black-out. On appeal, Scout contends that the district court erred in (1) refusing to give a requested jury instruction on self-defense; (2) refusing to allow a psychologist to testify that Scout had a peaceful personality; and (3) refusing to change a jury instruction regarding character evidence. We affirm.

## I.

On August 15, 1995, Scout, his brother Manuel Scout, and their friend Anthony Brave Heart gathered at Scout's and Manuel's home in the Evergreen Housing complex on the Pine Ridge Indian Reservation in South Dakota. The group consumed two half-gallons of vodka and a six-pack of malt liquor. Late that evening Scout, Manuel, and Brave Heart left Scout's home to walk to a friend's house nearby.

Tribal law prohibits public and private intoxication on the reservation. See Trial Tr. at 28 (testimony of Paul Rooks, Chief of Police of the Oglala Tribal Public Safety Commission, discussing Resolution 88-12). Oglala Sioux Tribe Public Safety Commission Officers Lloyd Bianas and John Attack Him received information on August 15 that Brave Heart and two others were intoxicated and causing a disturbance in the Evergreen Housing complex. After stopping at the home of Nathan Elk, a police officer who lived in the Evergreen Housing complex, Officers Bianas and Attack Him saw Brave Heart, Manuel, and Scout walking through the housing complex.

Officers Bianas and Attack Him approached Brave Heart, Manuel, and Scout. The three men fled, and the officers pursued and

-2-

apprehended them.  Officer Attack Him testified that he first apprehended Manuel, who was "pretty intoxicated" and struggled against the officer. See Trial Tr. at 41.  After placing Manuel in the back of the police car, Officer Attack Him drove the car to find the other suspects.

Officer Attack Him soon found Officer Bianas, who had overtaken Brave Heart and Scout.  When Officer Attack Him arrived, Officer Bianas had already subdued Brave Heart by spraying him with mace and handcuffing him. Officer Bianas also had Scout on the ground in an arm-lock.  Officer Attack Him placed Brave Heart in the back of the police car and then assisted Officer Bianas in securing Scout.

After the officers placed Scout in the police car, Officer Bianas stated that he had been hurt.  Officer Attack Him noticed that Officer Bianas's shirt had been torn and that he had a scrape on his forearm.  Upon searching the area, the officers discovered on the ground a seven-inch long utensil described as a fondue fork.

Officer Bianas testified at trial that he apprehended Brave Heart first, after pursuing him for a quarter of a mile.  Brave Heart resisted arrest, and swung his fists at Officer Bianas.  Officer Bianas maced Brave Heart, forced him to the ground, handcuffed him, and placed him against the hood of a nearby car.

Officer Bianas then looked for Scout.  Officer Bianas testified that he found Scout hiding in some weeds, and that

> I walked up to [Scout], told him he was under arrest.  He just come at me, like, you know, like he was going to jump on me; and when I grabbed his arm, felt like I got a scratch, you know, something scratched me, so I jumped back and maced him and he come at me again.

Trial Tr. at 69. Officer Bianas then forced Scout to the ground. After Scout was handcuffed, Officer Attack Him helped Officer Bianas place Scout in the police car.

Officer Bianas noticed "a sharp pain on the lower left side of the rib cage area," id. at 71, and a scratch on his left wrist. Officer Bianas's uniform shirt was torn and his undershirt was scratched. Officer Bianas and Officer Attack Him discovered the fondue fork in the area where Officer Bianas had apprehended Scout. Officer Bianas sought medical attention for his scratches, but had no serious injuries.

A day after the arrests, Manuel Scout signed a statement describing the events of the previous night. Manuel, Scout's brother, asserted that he had previously seen the fondue fork discovered at the arrest site and that "we have these at our house. Mom uses those to cook, maybe to fry a hot dog. . . . I don't know what [David] needed it for. We were just going for a walk." Trial Tr. at 120 (question to Manuel Scout, quoting Ex. 9).[3]

Although Manuel indicated that Scout's left eye was bleeding and shut as Scout was brought to the police car, Manuel gave no other indication of police abuse in his signed statement. At trial, however, Manuel testified that he saw the officers beat Brave Heart by striking his head against the police car, and that the officers maced Scout and Brave Heart while they were handcuffed in the back of the police car.

---

[3]David Scout testified at trial that the fondue fork was used to jimmy open the door to Manuel's room because the key to that room was missing. See Trial Tr. at 150.

Brave Heart signed a statement the day after his arrest asserting that his head had been struck against a police car twice by Officer Attack Him. At trial, Brave Heart testified that Officer Bianas arrested him "and started banging my head off the hood, I would estimate probably three to four times." Trial Tr. at 128. Although Brave Heart stated that he "got a broken nose and I should say two black eyes and a cracked chin," id. at 129, he never received medical treatment, and "let [his injuries] heal on its own." Id. at 134. Brave Heart also testified that he was maced while in the back of the police car, and that he saw Officer Bianas's leg "going up to" Scout's face when Scout was "going down to the ground . . . ." Id. at 129. Both Officers Bianas and Attack Him denied having used unnecessary force.

Scout testified that he had virtually no memory of the arrest because of an alcohol-induced black-out. Scout stated that he "blanked out" while listening to music in his home, see Trial Tr. at 147, and that the next thing that he remembered was that he "was outside walking by Nathan Elk's driveway, I heard someone say, 'the cops.' And then I took off." Id. Scout further testified that he did not learn that Officer Bianas was among the police officers pursuing him until the next day, see id. at 153-54,[4] and that he

---

[4]Scout provided the following testimony at trial:

Question by prosecutor: You didn't know it was Lloyd [Bianas] and John [A]ttack [H]im?

Answer by Scout: No.

Q. When did you find out it was Lloyd Bianas?

A. The next day.

Q. So you weren't running because you were afraid of Lloyd Bianas, because you didn't know it was Lloyd Bianas until the next day?

. . .

A. Yes.

-5-

had no memory of his alleged assault on Officer Bianas.

Scout complained of four injuries that he allegedly received during his arrest--including a swollen cheek, a bump on the back of his head, a cut on his forehead, and a shut eye--and testified that he "assumed" that the officers kicked him four times. Id. at 148. Scout sought medical treatment and received drops for his eye. Scout also testified that he had been arrested by Officer Bianas in the past, and that during a previous arrest Officer Bianas had slapped him with the back of his hand twice because Scout asked why he was being arrested. See Trial Tr. at 143.

Scout was indicted on a charge of assaulting a federal officer with a weapon, in violation of 18 U.S.C. § 111(a)(1). Scout attempted to pursue a defense of self-defense at trial. During the trial, Scout's attorney elicited testimony from two community members--both of whom were related to Scout--that Officer Bianas had a reputation for violence. See Trial Tr. at 94 (testimony of Aldeen Mary Steele Yellow Boy); id. at 99 (testimony of Myrna Young Bear). Scout also asserted that he had heard of Officer Bianas beating other prisoners. See id. at 144. The district court did not allow a psychologist who interviewed Scout to testify that Scout had a peaceful personality and would not have started a fight with Officer Bianas.

---

Q.   You don't know what happened out there, do you?

A.   No.

Trial Tr. at 153-54.

Scout submitted a proposed jury instruction to the district court which stated:

> If a person reasonably believes that force is necessary to protect himself from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he acted in self[-]defense. In order to convict the Defendant of any charge, you must find beyond a reasonable doubt that the Defendant was not acting in self[-]defense during the incident in question.

Appellant's Add. at 10. The district court did not issue this instruction to the jury, concluding that the evidence submitted did not support a self-defense instruction.

After a witness expressed her opinion that Officer Bianas had a violent reputation, a jury member sent the district court a note which asked, "Have the witnesses seen Mr. Bianas being violent or only heard reports from others? What is the source of his reputation for violence?" Trial Tr. at 186-87 (quoting note from juror). The district court notified the parties about this note, and Scout submitted a proposed jury instruction to clarify Federal Rule of Evidence 405's limitation of admissible character evidence. The proposed instruction stated:

> Generally, evidence of a person's character or a trait of character is not admissible at trial for the purpose of proving action in conformity therewith on a particular occasion. However, evidence of a pertinent trait of character offered by an accused and evidence of a pertinent trait of character of the alleged victim of the crime charged offered by an accused, and evidence by the prosecution to rebut such evidence offered by an accused is admissible at trial for the purpose of proving action in conformity therewith on a particular occasion.
>
> When the accused seeks to offer evidence of character, the proof is limited only to testimony as to reputation or by testimony in the form of opinion. On

cross-examination, inquiry is allowable into relevant specific instances of conduct.

Appellant's Add. at 12.  The district court declined to give the proposed instruction, and instead provided the following instruction:

You are instructed that evidence of the community reputation of Lloyd Bianas for violence has been received through the opinion of certain witnesses.  This evidence does not relate to specific instances of conduct but relates to the witnesses['] knowledge of such reputation.  You may give the evidence such weight as you think it deserves considering the testimony presented including the government's cross-examination.

Appellee's Br. at 9.

The jury convicted Scout of the lesser included charge of assaulting a federal officer without a weapon, in violation of 18 U.S.C. § 111.  Scout now appeals.

**II.**

Scout argues that the district court erred in refusing to give a proposed jury instruction on a defense of self-defense.  We disagree.

"We generally review the district court's refusal to give the defendant's requested jury instructions only for an abuse of discretion." United States v. Long Crow, 37 F.3d 1319, 1323 (8th Cir. 1994), cert. denied, 115 S. Ct. 1167 (1995).  However, "whether there is sufficient evidence to submit an affirmative defense [instruction] . . . to the jury is a question of law for the court," id., which we review de novo.  Id.

-8-

We "have long held that a defendant is entitled to an instruction on his theory of the case if there is evidence to support it and a proper request has been entered." Id. (quotations and citations omitted).  The burden on the defense to demonstrate that there is sufficient evidence to warrant an instruction is not onerous; indeed,

> [t]he defendant does not have to testify or even offer any evidence; the basis for the defendant's theory may derive from the testimony of government witnesses on direct or cross-examination.  Finally, the evidence to support a theory of defense need not be overwhelming; a defendant is entitled to an instruction on a theory of defense even though the evidentiary basis for that theory is weak, inconsistent, or of doubtful credibility.

Close v. Leapley, 18 F.3d 574, 580 (8th Cir. 1994) (quotations and citations omitted).

Despite this liberal standard, however, a defendant still has the burden of identifying some evidence to support his theory.  "[T]he district court is not required to put the case to the jury on a basis that essentially indulges and even encourages speculations." United States v. Branch, 91 F.3d 699, 712 (5th Cir. 1996)(quotations and citations omitted) (affirming district court's denial of self-defense instruction), petition for cert. filed, 65 U.S.L.W. 3468 (U.S. Dec. 19, 1996) (No. 96-989).  As we explained in Hall v. United States, 46 F.3d 855 (8th Cir. 1995):

> A self-defense instruction must be given if there is evidence upon which the jury could rationally sustain the defense.  A mere scintilla of evidence, however, is insufficient to require the instruction.  To sustain the defense, the jury would have to find that [the defendant] used such force that he reasonably believed was necessary to protect himself from unlawful physical harm about to be inflicted upon him by another.  Nor is the defendant entitled to an instruction when the evidence does not

support it.

Id. at 857 (affirming district court's denial of proposed self-defense instruction) (citations, quotations, and alterations omitted) (emphasis added). See also United States v. Alvarez, 755 F.2d 830, 842 n.12 (11th Cir. 1985) ("[S]elf-defense is an affirmative defense on which the defendant bears the burden of production. In a federal prosecution, however, once the defendant has met the burden of production, the government must satisfy the burden of persuasion and must negate self-defense beyond a reasonable doubt." (citation omitted)).

Scout has pointed to no direct evidence that he assaulted Officer Bianas in self-defense. Officer Bianas testified that Scout's attack was unprovoked, Scout testified that he cannot remember what took place after he ran from the police, and no other witnesses testified that they saw Scout's attack on Officer Bianas. Scout instead relies on evidence that Officer Bianas had a violent reputation, that Scout had a peaceful reputation, and that Scout was injured during his arrest. Based on this evidence, Scout asserts that, when he was arrested, Scout

> did not get up when approached by [Officer Bianas], that [Officer Bianas] then started to kick the Defendant about his head as [Scout] lay on the ground and that if the Defendant acted aggressively towards [Officer Bianas] it was in response to being kicked about his head.

Reply Br. at 3-4.

Scout's scenario is founded on sheer speculation. There was no medical testimony that Scout's alleged head injuries were caused by Scout's being kicked. Instead, all the evidence indicates that Scout received the injuries when being taken to the ground after

-10-

his assault on Officer Bianas.  See Trial Tr. at 69-70 (Question by prosecutor:  "Did you take [Scout] down hard enough to cause that apparent injury by his cheek and eye?"  Answer by Officer Bianas:  "Yes, I did.  I took him down hard."); id. at 129 (testimony of Brave Heart describing Officer Bianas's leg "going up" into Scout's face as Scout "was going down to the ground . . . .").  Scout's assumption that he had been kicked was not evidence, but rather was mere conjecture.  Officer Bianas's alleged reputation for violence could have had no effect on Scout's state of mind at the time of Scout's assault on Officer Bianas, because Scout testified that he did not know which police officer was apprehending him.

Scout also relied on testimony at trial that he had a reputation for passivity.  While this evidence may have lent support to an otherwise properly-founded theory of self-defense,[5] we do not believe that this reputation evidence, standing alone, was sufficient to mandate a jury instruction on self-defense.  See Branch, 91 F.3d at 712 ("[W]hile a particular piece of evidence standing alone may support inferences that warrant an instruction, those inferences may evaporate after reviewing the entire record."); cf. United States ex rel. Rooney v. Housewright, 568 F.2d 516, 519-20 (7th Cir. 1977) ("There is not a shred of evidence to suggest that what happened was to any degree in self-defense, regardless of what a bad character the decedent may have been known to be.  From the record it appears that the petitioner, for his own reasons, calmly and deliberately went about the business of killing [the victim]. The petitioner's own testimony puts petitioner in the

---

[5]By Scout's own testimony, at the time of his assault on Officer Bianas, Scout was so intoxicated that he could not even remember what had occurred.  In light of Scout's altered state of mind at the time of the events in issue, it is questionable whether a reasonable jury would have placed any value on Scout's general reputation for passivity.

-11-

role of an armed aggressor who first shot, without sufficient provocation, a fleeing, apparently unarmed man, and then again charged at him firing to complete the assault, intending to finish him off by using the pistol, a substantial weapon, as a club if need be.  That being so, the decedent's reputation and petitioner's knowledge of it were not relevant.").[6]

It is not the purpose of a jury instruction to invite jury speculation of the facts, see Branch, 91 F.3d at 712 ("[T]he district court is not required to put the case to the jury on a basis that essentially indulges and even encourages speculations." (quotations and citations omitted)), or nullification of the law.  See United States v. Drefke, 707 F.2d 978, 982 (8th Cir. 1983) (per curiam) ("[F]ederal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed.").  Scout has pointed to no evidence which could have led any rational jury to find that Scout assaulted Officer Bianas in self-defense.  In the absence of relevant evidence, a self-defense instruction in this case would have served no legitimate purpose.  Accordingly, the district court did not err in refusing to issue a jury instruction on self-defense.

---

[6]Brave Heart's and Manuel's testimony that Officers Bianas and Attack Him maced and beat Brave Heart and Scout after they had been arrested and handcuffed is, of course, disturbing.  If the testimony is believed--and we express no opinion on the credibility of this evidence--it might well support disciplinary action or civil or criminal liability against the officers.  This testimony does not, however, shed any light on Scout's actions prior to his restraint, nor to his motivations and state of mind during his assault on Officer Bianas.  At best, this evidence suggests that Officer Bianas engaged in retributional violence against Scout following Scout's initial assault; but this alleged post hoc aggression cannot transform Scout's initial assault into an act of self-defense.

## III.

Scout next contends that the district court erred in refusing to allow a psychologist to testify that Scout had a peaceful personality and that Scout would not have started a fight. "Expert testimony is admissible only when the expert's specialized knowledge will help the jury understand the evidence or determine a fact in issue." United States v. Nunn, 940 F.2d 1148, 1149 (8th Cir. 1991). Here, the psychologist's testimony would have done no more than bolster Scout's contention that Scout was normally a peaceful person. As we have discussed above, this contention was insufficient to warrant a jury instruction on self-defense. Because the psychologist's testimony would not have shed light on a fact at issue in the trial, the district court did not err in disallowing the psychologist's testimony. See id. at 1149-50 ("The psychologist's testimony would have shed no light on the elements of [the defendant's affirmative] defense. Thus, the district court did not abuse its discretion in excluding the testimony.").

## IV.

Finally, Scout contends that the district court erred in refusing to issue Scout's requested jury instruction regarding the witnesses' testimony of Officer Bianas's reputation. The instruction given by the district court correctly stated the law regarding character evidence, see Fed. R. Evid. 405(a), while Scout's requested instruction placed an undue emphasis on the prosecutor's ability to elicit specific acts testimony on cross-examination. We do not believe that the district court abused its discretion in instructing the jury on character evidence. See United States v. Dreamer, 88 F.3d 655, 658 (8th Cir. 1996)

(standard of review).[7]

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]In addition, we note that any possible error in this matter would have been harmless.  As discussed above, Scout testified that he did not know the identity of the police officers pursuing him.  Because Officer Bianas's alleged reputation for violence could therefore not have affected Scout's state of mind when assaulting Officer Bianas, Officer Bianas's reputation--and how it was derived--was irrelevant.

-14-