[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15542

_____

D.C. Docket No. 2:15-cr-00013-SPC-CM-1

UNITED STATE OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL J. RONGA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 20, 2017)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and REEVES*, District
Judge.

---

* Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

REEVES, District Judge:

Appellant Michael Ronga is a former deputy with Florida's Lee County Sheriff's Office. In May 2013, Ronga was accused of assaulting and robbing Rodolfo Lopez-Castaneda, a Guatemalan-national, after being directed to give him a courtesy ride home. Ronga initially denied the assault, claiming that no altercation occurred. But after several hours of interrogation, Ronga changed his story by admitting that he took Lopez-Castaneda to a construction site, frisked him, and shoved him during the encounter. However, Ronga consistently denied that he robbed the victim or struck him with a closed-fist. Ronga was later indicted on federal charges of deprivation of rights while acting under color of law, and obstruction of justice. Ronga was convicted on both counts following a six-day jury trial. During a subsequent sentencing proceeding, Ronga received a below-guidelines sentence which included 72 months' incarceration. Ronga appeals both his conviction and sentence. After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts

In the early morning hours of May 5, 2013, Lee County Sheriff's Deputies were called to a restaurant and bar in Bonita Springs, Florida. Security personnel at the restaurant sought law enforcement assistance with a patron who refused to leave the premises. The patron was accompanied by a minor who was permitted to

enter the bar based on assurances that he would not consume alcohol. But after discovering that the minor was consuming alcohol, security personnel asked both parties to leave. The patron refused. When Sheriff's deputies Sergeant Mark Young and Deputy Ronga arrived, the patron was sitting on a bench outside the restaurant. Restaurant management did not wish to press charges, but asked the deputies to remove the patron from the premises. In response, Sergeant Young directed Ronga to "get him out of here," referring to the patron, later identified as Lopez-Castaneda. Ronga performed a protective frisk of Lopez-Castaneda and then placed him in the rear seat of his vehicle for a courtesy ride home. Ronga, however, did not take Lopez-Castaneda home. Instead, Ronga drove to a construction site of a new housing subdivision. The events that followed were disputed during trial.

Lopez-Castaneda testified that Ronga frisked him, removed his cell phone and money, and then hit him numerous times with a closed fist, knocking him to the ground. Hospital records revealed that Lopez-Castaneda suffered a broken nose and a bruised lip, thus confirming that a violent confrontation of some sort had occurred. According to GPS records from the police cruiser, the entire altercation lasted only a minute. The evidence offered during trial also indicated that a struggle had occurred at the construction site.

Following the altercation, Ronga proceeded with his shift, driving to meet Sergeant Young for coffee at a nearby convenience store.  Some hours later, Lopez-Castaneda and his sister reported the incident to law enforcement.  Ronga was still on his shift at the time and responded to the call for assistance.  Lopez-Castaneda immediately identified Ronga as the assailant.  Lopez-Castaneda asked to be taken to a hospital and was later transported there by ambulance.

During the investigation of the incident, investigators took Lopez-Castaneda to the site of the altercation and obtained his statement.[1]  Investigators also acquired physical evidence and took photographs of Lopez-Castaneda, photographs of the location of the altercation, and clay molds of footprints from the construction site.  They also obtained a warrant and searched Ronga's residence for additional evidence.

Ronga was questioned by Lieutenant Murphy when he returned to work that evening.  Murphy described Ronga as cautious but cooperative during this questioning.  Ronga recounted a near-head-on collision occurring prior to the altercation with Lopez-Castaneda which left him scared and shaken.  He recounted being called to the restaurant regarding a patron accompanied by an underage drinker.  Ronga described Lopez-Castaneda as intoxicated, but calm and collected.

---

[1]    Lieutenant William Murphy interviewed Lopez-Castaneda and obtained his version of the events.

4

According to Ronga, Lopez-Castaneda did not present any problems prior to his being dropped off at his home in the Sandy Hollow apartment complex. Ronga insisted that "he had no problems with this guy," referring to Lopez-Castaneda.

On several occasions, however, Ronga reiterated that he was stressed the night of the incident as a result of the near-head-on collision. He insisted numerous times that there was no altercation with Lopez-Castaneda, and that Lopez-Castaneda had not "done anything stupid." Ronga was later confronted with GPS data indicating that he had gone to the construction site and not to Lopez-Castaneda's apartment complex, which was directly contrary to his earlier representations. Ronga then reiterated that his memory was fuzzy due to the stress of the earlier incident, but finally admitted that he had, in fact, taken Lopez-Castaneda to the construction site.

Ronga eventually admitted that he pushed Lopez-Castaneda twice and removed a cell phone from his pocket. But he consistently denied that he took money from Lopez-Castaneda, or struck Lopez-Castaneda with a closed fist. According to Ronga, after frisking Lopez-Castaneda, he may have left the victim's cell phone on the trunk of his vehicle. However, Ronga denied having possession of the cell phone and denied having any idea of its location.

Ronga also denied that Lopez-Castaneda attacked him, but agreed to the interrogator's suggestion that he pushed Lopez-Castaneda in an effort to get him to

5

walk towards his residence.  After being confronted with the physical evidence and the extent of Lopez-Castaneda's injuries, Ronga admitted to pushing him a second time.  Ronga claimed that Lopez-Castaneda came toward him as he was returning to his vehicle.  Ronga contended that he pushed Lopez-Castaneda away, saying "just go."  Ronga admitted that during the second push his left hand may have struck Lopez-Castaneda's face.

Ronga was arrested following the interview.  Lopez-Castaneda's cell phone was later recovered near the side of the road, just outside the entrance to the construction site.

## B.    Procedural History

Ronga was found guilty following trial of "willfully depriving Rodolfo Lopez-Castaneda of his Constitutional right not to be deprived of liberty and property without due process of law, while acting as a deputy sheriff of the Lee County Sheriff's Office, in violation of 18 U.S.C. § 242."  Paragraph 1B of the Verdict Form then directed the jury to determine the specific constitutional deprivation.  The three options included: "the right to be free from the intentional use of excessive force by assaulting Rodolfo Lopez-Castaneda, resulting in bodily injury;"  "the right to be free from the unreasonable seizure of property by forcibly taking currency belonging to Rodolfo Lopez-Castaneda, resulting in bodily injury" and/or; "the right to be free from the unreasonable seizure of property by forcibly

6

taking a cell phone belonging to Rodolfo Lopez-Castaneda, resulting in bodily injury." The jury checked the first and third options, finding that Ronga assaulted and forcibly took the victim's cell phone, but not his money. The jury also found Ronga guilty of "knowingly engaging in misleading conduct towards another person, with intent to hinder, delay and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a federal offense, namely, deprivation of civil rights under color of law, in violation of 18 U.S.C. § 1512(b)(3)."

Ronga now appeals his conviction and sentence. Ronga asks this court to acquit him of the obstruction charge, arguing that no misleading information was actually transferred to federal officials because he ultimately abandoned his earlier false statements and told the truth. Ronga also seeks a new trial on the assault and robbery charge, contending that the district court improperly declined to give a self-defense instruction. Finally, Ronga challenges his 72-month, below-guideline sentence as substantively unreasonable.

## II.    STANDARD OF REVIEW

The sufficiency of the evidence supporting a conviction is reviewed *de novo*. *See United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014). Further, "[i]n reviewing the sufficiency of the evidence, we look at the record in the light most favorable to the verdict and draw all reasonable inferences and resolve all

questions of credibility in its favor." *United States v. White*, 663 F.3d 1207, 1213 (11th Cir. 2011) (internal quotation marks and citation omitted). Questions of statutory construction are also reviewed *de novo*. *See United States v. Evans*, 478 F.3d 1332, 1341 (11th Cir. 2007). We likewise review *de novo* the issue of whether a requested jury instruction is supported by sufficient evidence. *United States v. LaFond*, 783 F.3d 1216, 1221 (11th Cir. 2015); *United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997).

A district court's refusal to give a requested jury instruction is reviewed for abuse of discretion. *United States v. Svete*, 556 F.3d 1157, 1161 (11th Cir. 2009) (*en banc*). The refusal "is reversible error where the requested instruction (1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Eckhardt*, 466 F.3d 938, 947–48 (11th Cir. 2006). "[W]e will only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* at 948.

Finally, we review the substantive reasonableness of a sentence under an abuse of discretion standard. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1255 (11th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007)). "A district court abuses its discretion when it

(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (*en banc*).

### III.    DISCUSSION

#### A.    Sufficiency of the Evidence

Ronga contends that the evidence is insufficient to support his conviction under the obstruction-of-justice charge given to the jury since he told the "truth" before any of his misleading statements were communicated to a federal officer. He argues that this Court should adopt a narrow interpretation of the obstruction-of-justice statute, 18 U.S.C. § 1512(b)(3) and, interpreting the statute as he proposes, find that the evidence presented by the Government in this case was insufficient to sustain his conviction. Ronga's proffered statutory interpretation fails, and we find that there was sufficient evidence for a reasonable jury to find that Ronga obstructed justice under § 1512(b)(3).

"To prove a violation of § 1512(b)(3), the government must establish beyond a reasonable doubt that the defendant knowingly and willfully (1) engaged in misleading conduct toward another person, (2) with the intent to hinder, delay or prevent the communication of information to a federal law enforcement officer or federal judge, (3) about the commission or the possible commission of a federal

crime." *United States v. Veal*, 153 F.3d 1233, 1253 (11th Cir. 1998) (abrogated on other grounds by *Fowler v. United States,* 563 U.S. 668, 131 S. Ct. 2045, 179 L. Ed. 2d 1099 (2011)).  A state law enforcement officer qualifies as "another person" for purposes of the statute.  *Id.* at 1246.  Further, a conviction under § 1512(b)(3) does not require proof that a federal investigation was ever initiated or that it was ongoing at the time the statement was made.  *See United States v. Ronda*, 455 F.3d 1273, 1288 (11th Cir. 2006).  Rather than require that a federal proceeding be ongoing, § 1512(b)(3) "requires only that a defendant intended to hinder, delay, or prevent communication to [a federal official]."  *Id.* (citing *Veal*, 153 F.3d at 1250).  And there need only be a "reasonable likelihood" that the communication will be made to a federal official.  *United States v. Chafin*, 808 F.3d 1263, 1274 (11th Cir. 2015) (citing *Fowler¸* 563 U.S. at 670, 131 S. Ct. at 2048).  In short, where a defendant makes a misleading statement to a law enforcement officer, the statement is made with "intention to thwart an inquiry" into a possible federal crime, and there is a reasonable likelihood that the misleading statement will be communicated to a federal official, all elements of the crime are satisfied.

On appeal, Ronga argues that, to sustain a conviction under the subject federal statute, there must be an actual transfer of misleading information. Additionally, he contends that, when an individual abandons his deceptive ways and provides truthful information, the conviction cannot stand.  If either argument

10

has merit, Ronga would be entitled to a new trial, rather than the acquittal he seeks. Whether he actually provided truthful information in response to questioning would require a jury finding. But here, there is sufficient evidence that he did not provide such information. Therefore, acquittal would not be appropriate.

Ronga cites *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998), in support of his statutory interpretation argument. We recognized in *Veal* that the intention behind § 1512(b)(3) is to "ensure that information received by federal investigators or judges regarding a potential crime be correct, truthful, and complete to facilitate a full and fair investigation and adjudication." 153 F.3d at 1252. Further, federal jurisdiction under § 1512(b)(3) is "based on the federal interest of protecting the integrity of potential federal investigations by ensuring that transfers of information to federal law enforcement officers and judges relating to the possible commission of federal offenses be truthful and unimpeded." *Id.* The defendant relies on these statements as a basis for his argument that a *transfer* of misleading information is necessary for a conviction to stand under the statute. However, these policy statements do not control interpretation of the statute. Further, the legislative history does not support the defendant's narrow reading of the statute.

"[I]t is a well established axiom of statutory interpretation that in construing a statute, courts must first look to the plain meaning of the statute itself." *Solis-*

11

*Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam).  Despite the defendant's arguments about the statute's purpose, "[r]eview of the legislative history is not necessary unless a statute is inescapably ambiguous."  *Id.*  Here the text of the statute is clear as to both the physical act, *actus reus*, and the mental intent, *mens rea*, necessary for the crime.  The *actus reas* was the defendant's engaging in misleading conduct.  The *mens rea* was his intent to hinder, delay, or prevent communication of information relating to a possible federal offense.  The text of the statute does not require the actual transfer of misleading information to a federal official.  It provides:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
> …
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense…
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C.A. § 1512.

Despite this Court's earlier discussion of the statute's purpose, we acknowledged in *Veal* that the plain meaning of the statute is considered before resorting to legislative intent.  153 F.3d at 1245.  The question presented in *Veal* was whether the term "another person" could include a state investigator.  Because the term was unambiguous, determining its meaning did not require resort to

12

legislative history. *Id.* Likewise, the text of the statute here is unambiguous and supports the defendant's conviction. Even if its purpose is to prevent the transfer of misleading information to federal officials, it follows that the statute criminalizes attempts to provide misleading information or inhibit truthful information from being transferred.

What is left is the defendant's argument that when an individual eventually provides truthful information, he cannot be charged with obstruction. But Ronga fails to offer any authority to bolster this argument and it is not supported by the plain text of the statue. The *actus reus* is "engag[ing] in misleading conduct toward another person" and the *mens rea* is "with intent to hinder, delay, or prevent the communication . . . of information relating to the commission or possible commission of a Federal offense." Perhaps it is possible that when an individual comes clean, he or she may no longer possess the necessary *mens rea*. However, the elements of the crime are met *before* the individual provides truthful information, and there is no requirement that the individual persist in deceptive behavior to support a conviction.

In this case, the jury could have concluded that it was *not* reasonably likely that misleading information would be transferred to a federal investigator. It could have found that Ronga eventually provided truthful information, and that it was not likely that his prior deceptive comments would be transferred to federal officials.

13

But the jury did not reach this conclusion. Instead, it was faced with competing narratives: (i) the defendant's sworn statement that he pushed the victim twice, but only hit his face incidentally, and with an open hand, and conversely (ii) the victim's testimony and other evidence that he was punched in the face repeatedly. To this day, the defendant denies that he punched the victim with a closed fist. If the jury credited the victim's statement and supporting evidence over the defendant's testimony, then it could have reasonably found that a deceptive statement was actually communicated to the FBI.

## B. Self-Defense Instruction

Ronga also seeks a new trial based on the district court's refusal to give a self-defense instruction. Whether the defense produced sufficient evidence to obtain a requested jury instruction is reviewed *de novo*. *United States v. LaFond*, 783 F.3d 1216, 1221 (11th Cir. 2015); *United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997). However, a district court's refusal to give a requested jury instruction is reviewed for abuse of discretion. *United States v. Svete*, 556 F.3d 1157, 1161 (11th Cir. 2009) (*en banc*). "We consider three factors when determining whether the district court's refusal to give a requested jury instruction warrants reversal: (1) whether the requested instruction is a substantially correct statement of the law; (2) whether the jury charge given addressed the requested instruction; and (3) whether the failure to give the requested instruction seriously

14

impaired the defendant's ability to present an effective defense." *United States v. Hill*, 799 F.3d 1318, 1320 (11th Cir. 2015) (internal quotation marks and citation omitted); *see also United States v. Eckhardt*, 466 F.3d 938, 947–48 (11th Cir. 2006).

Self-defense is an affirmative defense on which the defendant bears the burden of production. *United States v. Alvarez*, 755 F.2d 830, 842 n.12 (11th Cir. 1985) (*citing Patterson v. New York*, 432 U.S. 197, 231 n.18, 97 S. Ct. 2319, 2338 n.18, 53 L. Ed. 2d 281 (1977) (Powell, J., dissenting)). Once the defendant meets this obligation, the burden of persuasion shifts to the government. *Id.* Specifically, the government must then prove, beyond a reasonable doubt, that the defendant was not acting in self-defense. *Id.*

Our precedent has not been consistent in defining the defendant's burden of production. *See United States v. Alvarado*, 808 F.3d 474, 488-89 (11th Cir. 2015) (discussing cases). Some opinions have recognized a "sufficient evidence for a reasonable jury to find in his favor" standard. *Id.* at 489, citing *Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 887, 99 L. Ed. 2d 54 (1988); *United States v. Gutierrez*, 745 F.3d 463, 472 (11th Cir. 2014). The United States Court of Appeals for the Fifth Circuit has expressly adopted this standard. S*ee United States v. Branch*, 91 F.3d 699, 712 (5th Cir. 1996) ("The requirement that the evidence be sufficient to persuade a reasonable juror . . . extends to all defenses for

which the defendant bears the initial burden of production.").  However, we have often described the standard for obtaining a requested defense instruction to be "any foundation" in the evidence.  *See Alvarado*, 808 F.3d at 489 (listing cases).  As stated in *United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir.  2011), "[a] criminal defendant has the right to a jury instruction on a proposed theory of defense, provided it is a valid defense and there is some evidence at trial to support the instruction."  Assuming there is some tension between these standards, as in *Alvarado*, we need not harmonize them here, because the defendant has failed to meet either test.

The instruction sought by the defendant correctly states the law as it relates to self-defense.  It provides:

> A person is entitled to defend himself against the immediate use of unlawful force.  But the right to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.

> The government has the burden of proving the defendant did not act in self-defense.  For you to find the defendant guilty, the government must prove that it was not reasonable for the Defendant to think that the force he used was necessary to defend himself against an immediate threat.  Unless the government proves this beyond a reasonable doubt, you must find the defendant not guilty.

The evidence Ronga offers in support of this instruction include his words "get away from me," which he describes as signifying a perceived threat.  Further, he points to Sergeant Nalewaik's testimony regarding the victim's description of

16

the altercation.  Nalewaik testified that, in witnessing Lopez-Castaneda describe to a Spanish-speaking officer what had happened, it seemed like Lopez-Castaneda turned and contested being frisked. [2]   Further, Ronga points to the re-cross testimony of Captain Murphy.  When asked whether Lopez-Castaneda challenged being frisked a second time, Murphy answered "possibly."  And when asked whether Lopez-Castaneda could have intended to attack Ronga, Murphy answered "possibly."  There was also testimony elicited regarding a law enforcement officer's right to use force to protect himself, based upon a "reasonable belief" that the officer would feel threatened.

Even taking this evidence in the light most favorable to Ronga, it is insufficient to require that a self-defense instruction be given to the jury.  As an initial matter, Murphy's acknowledgement that Lopez-Castaneda could "possibly" have been about to attack Ronga is speculation.  "While a particular piece of evidence standing alone may support inferences that warrant an instruction, those inferences may evaporate after reviewing the entire record." *United States v. Scout*, 112 F.3d 955, 961 (8th Cir. 1997) (quoting *Branch*, 91 F.3d at 712).  Murphy was not present when the incident between Ronga and Lopez-Castaneda occurred.  Moreover, Ronga himself never claimed to feel threatened.  Instead he expressly

---

[2]     At trial, Lopez-Castaneda testified otherwise.  Rather than turning to object to the frisk, he alleged that Ronga turned him around after the frisk, and began punching him.

disavowed that his pushing of Lopez-Castaneda was in response to an attack. And while Ronga's statement "get away from me" might be perceived as responsive to a perceived threat, Ronga denied during his interrogation that he was threatened. According to Ronga, he was just trying to get Lopez-Castaneda to leave. As for Nalewaik's testimony, he could not understand what Lopez-Castaneda was saying at the time because Lopez-Castaneda was speaking Spanish, and the Spanish-speaking officer who could understand what Lopez-Castaneda said indicated that Lopez-Castaneda did not say that he resisted the frisking.

Viewing the evidence in the light most favorable to the defendant does not mean viewing any statement or assertion out of context. Viewing the record as a whole, the evidence does not support a self-defense instruction. As stated in *Branch*, "[w]e review the record cognizant that the merest scintilla of evidence in the defendant's favor does not warrant a jury instruction regarding an affirmative defense for which the defendant bears the initial burden of production." 91 F.3d, 712.

The district court also concluded that a self-defense instruction can be fairly and adequately encompassed in another instruction requiring willfulness. The defendant contends, and we have recognized in *United States v. Arias*, 431 F.3d 1327, 1340 (11th Cir. 2005), and *United States v. Ruiz*, 59 F. 3d 1151, 1154 (11th Cir. 1995), that "a criminal defendant has the right to have the jury instructed on

18

his theory of defense, separate and apart from instructions given on the elements of the charged offense." However, because the defendant did not meet his burden of production, he was not entitled to a separate instruction.

The final question is whether the district court's failure to give the requested instruction substantially inhibited the defendant's ability to mount an effective defense. Even without the self-defense instruction, the government bore the burden of proving that Ronga's use-of-force was willful and unlawful. When an officer uses force reasonably necessary to prevent harm, he acts lawfully. Therefore, the defendant could not have intended to violate the law if he were acting legitimately in self-defense. Because the defendant was allowed to contest the willfulness element, he was not inhibited from presenting an effective defense.

### C.    Substantive Reasonableness of Sentence

Finally, Ronga argues that his below-guideline, 72-month term of incarceration is substantively unreasonable because it is greater than necessary to fulfill the statutory purposes listed in 18 U.S.C. § 3553(a). Specifically, he contends that remand is required because the district court failed to adequately consider the circumstances of the offense and the need to avoid unwarranted sentencing disparities among defendants convicted of similar conduct. Neither argument has merit.

19

We review the reasonableness of a sentence under a deferential abuse of discretion standard of review. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007). Reviewing reasonableness is a two-part process which requires us to first ensure that the district court did not commit a significant procedural error, and second, that the sentence is substantively reasonable. *Id*. The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). In evaluating substantive reasonableness, we consider the totality of the circumstances and whether the sentence achieves the purposes stated in § 3553(a). *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009).

The district court abuses its discretion if it: (i) fails to consider relevant factors that were due significant weight, (ii) gives an improper or irrelevant factor significant weight, or (iii) commits a clear error of judgment by balancing the proper factors in an unreasonable manner. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). However, when the district court imposes a sentence that is within the guideline range, we will expect, but not presume, that it is reasonable. *Sarras*, 575 F.3d at 1219. Likewise, a sentence that is well below the statutory maximum sentence is likely to be reasonable. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

20

In determining an appropriate term of incarceration, the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). As such, the district court need not specifically address every mitigating factor raised by the defendant for the sentence to be substantively reasonable. *United States v. Snipes*, 611 F.3d 855, 873 (11th Cir. 2010). We will not vacate the sentence merely because another sentence might be more appropriate. Instead, we will find the sentence to be substantively unreasonable only if the district court committed a clear error of judgment. *Irey*, 612 F.3d at 1190-91.

Ronga's guideline range for imprisonment was calculated as 121-151 months, and he does not challenge that calculation on appeal. He argued for numerous variances during the sentencing hearing. Ronga first argued for variances based on aberrant behavior, and that his behavior was outside the heartland of cases upon which the relevant guideline sections are based. Both variances were denied. He then attempted to argue that the court needed to avoid unwarranted sentencing disparities, noting a few cases for comparison.

While Ronga sought a variance below the non-binding guidelines range, the United States sought the statutory maximum sentence. After carefully considering the parties' arguments, the district court found that the sentence advocated by the

21

government was not warranted when all the statutory sentencing factors were considered. Instead, it stated:

> The Court need not sentence [the defendant] to the maximum term allowed by law in order to fashion a sentence that is just punishment for the offense, reflects the seriousness of the offense, promotes respect for the law, and also affords adequate deterrence. I do find for those reasons that a variance is appropriate.

Rejecting a guidelines sentence, the court varied downward and imposed a sentence of 72 months' incarceration.

Ronga is unable to demonstrate that his sentence is substantively unreasonable in light of the district court's consideration of all the evidence presented and in light of the § 3553(a) factors. The district court heard arguments regarding the possible grounds for departure, considered Ronga's guideline range and all relevant § 3553(a) factors. It then imposed a 72-month total sentence. Ronga's term of incarceration is substantially below the properly calculated guideline range of 121-151 months. It cannot be said to be unreasonably severe under the facts presented. *See Sarras*, 575 F.3d at 1219.

Moreover, the district court did not commit a clear error of judgment in weighing the § 3553(a) factors. *Irey*, 612 F.3d at 1190-91. Ronga's primary contention is that the district court balanced the § 3553(a) factors but failed to adequately consider the circumstances of the offense and the need to avoid unwarranted sentencing disparities among defendants convicted of similar conduct.

22

However, it is clear that the district court considered the nature of the offenses in explaining that Ronga betrayed the public's trust and demonstrated a flagrant disregard for the law when he committed the crimes of which he was convicted. Likewise, the court expressly considered the need to avoid unwarranted sentencing disparities in fashioning a total sentence that was reasonable under the circumstances.

*Ronga* cites five cases for comparison in which other law enforcement officers arguably engaged in more egregious conduct, but received lighter sentences. Each case, however, is distinguishable on its facts. Further, § 3553(a)(6) does not create a metric whereby a sentencing court must compare certain selected sentences imposed by other judges within the district or circuit. As other circuits have recognized, § 3553(a)(6) is focused primarily on nationwide sentencing disparities. *See United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007) (listing cases). The focus on nationwide disparities does not mean, of course, that sentences imposed in this circuit are subject to a "national grade curve." *United States v. Hill*. 643 F.3d 807, 885 (11th Cir. 2011). National uniformity is considered by the United States Sentencing Commission in establishing guidelines ranges, and § 3553(a)(6) serves as a reminder of that goal of uniformity.

23

Further, it was not an abuse of discretion for the district court to place greater emphasis on the serious nature of the offense and Ronga's personal history rather than the defendant's hand-picked cases in which other defendants arguably received more lenient sentences. The weight given to the particular § 3553(a) factor was within the discretion of the trial court. *Clay*, 483 F.3d at 743. Under the circumstances presented, we conclude that the district court did not abuse its discretion by imposing a 72-month term of incarceration.

## IV.    CONCLUSION

The Defendant's conviction and sentence are **AFFIRMED**.